**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-31457** |
| | § | |
| **35NB LLC** | § | |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

**35NB LLC DISCLOSURE STATEMENT**
**May 29, 2020**

## Contents

I.   Introduction ........................................................................................................................ 3

    General Information Concerning Disclosure Statement and Plan ........................................... 3

II.  Disclaimers ......................................................................................................................... 3

III. Answers to Commonly Asked Questions ............................................................................ 4

    Who is the Debtor? ............................................................................................................... 4

      What is a Chapter 11 bankruptcy? ...................................................................................... 4

      If the Plan governs how my claim is treated, what is this Disclosure Statement? .................. 4

      Do I have to attend the hearing on the Disclosure Statement and Plan? .............................. 4

      How do I determine how my Claim or Interest is classified? ................................................ 5

      Why is confirmation of the Plan important? ........................................................................ 5

      What is necessary to confirm the Plan? .............................................................................. 5

      Is there a Creditors' Committee? ....................................................................................... 5

      When is the deadline for returning my ballot? .................................................................... 5

IV. BACKGROUND/OVERVIEW OF THE DEBTOR'S BUSINESS ...................................... 6

    A.   Description and History of the Debtor's Business ........................................................ 6

    B.   Management and Insiders of the Debtor ...................................................................... 6

    C.   Events Leading to Bankruptcy .................................................................................... 6

    D.   Debtor's Financial Information .................................................................................... 7

    1. Accounting Method ...................................................................................................... 7

    2. Debtor's Assets ............................................................................................................ 7

    3. Sources of Income ........................................................................................................ 7

V.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS
AND EQUITY INTERESTS .................................................................................................... 8

    A.   What is the Purpose of the Plan of Reorganization? .................................................... 8

    B.   Classes of Claims ....................................................................................................... 8

C.   Specific Rights of Claimant ........................................................................ 12

D.   Means of Implementing the Plan ................................................................ 12

E.   Risk Factors ................................................................................................. 13

F.   Executory Contracts and Unexpired Leases ................................................ 14

G.   Tax Consequences of Plan .......................................................................... 14

VI. CONFIRMATION REQUIREMENTS AND PROCEDURES ............................................. 15

A.   Who May Vote or Object ............................................................................ 16

1. What Is an Allowed Claim or an Allowed Equity Interest? ............................................ 16

2. What Is an Impaired Claim or Impaired Equity Interest? ............................................... 16

3. Who is not Entitled to Vote ........................................................................... 16

4. Who Can Vote in More Than One Class ......................................................... 17

B.   Votes Necessary to Confirm the Plan ......................................................... 17

1. Votes Necessary for a Class to Accept the Plan .................................................. 17

2. Treatment of Nonaccepting Classes ................................................................ 17

C.   Liquidation Analysis ................................................................................... 18

D.   Feasibility ................................................................................................... 19

Ability to Fund Plan ......................................................................................... 19

VII.   EFFECT OF CONFIRMATION OF PLAN .................................................................. 20

A.   Discharge ..................................................................................................... 20

B.   Modification of Plan .................................................................................... 20

C.   Final Decree ................................................................................................ 20

# I.  Introduction

## General Information Concerning Disclosure Statement

**35NB LLC** ("Debtor") submits this Disclosure Statement under section1125 of the Bankruptcy Code and Bankruptcy Rule 3016 to all of its known Creditors. The purpose of this document is to disclose information adequate to enable Creditors who are entitled to vote to arrive at a reasonably informed decision in exercising their rights to vote on the Plan of Reorganization.

Capitalized terms used but not defined in this document shall have the meanings assigned to them in Debtor's Plan or in the Bankruptcy Code and Bankruptcy Rules. All section references are to the Bankruptcy Code unless otherwise indicated.

The Debtor has promulgated the Plan consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide an opportunity for the Debtor to fully repay its creditors. Nothing in the Plan is intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims under the Plan. Every effort has been made to explain fully various aspects of the Plan as they affect the Creditors. If any questions arise, the Debtor urges you to contact the Debtor's counsel and he will attempt to resolve your questions. Counsel for the Debtor is Nelson M. Jones III, 440 Louisiana, Suite 1575, Houston, Texas 77002. You may, of course, wish to consult with your own counsel. All of the information contained in this Disclosure Statement was obtained from the Debtor's books and records or from the Managing Members of Debtor, 35NB.

# II.  Disclaimers

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS AND EQUITY INTEREST HOLDERS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS AND DEBTOR'S SCHEDULES EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT THE DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR. UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE CONCERNING THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED. WHILE THE INFORMATION PROVIDED HEREIN IS BELIEVED RELIABLE, THE DEBTOR HAS NOT UNDERTAKEN TO VERIFY OR INVESTIGATE SUCH INFORMATION, AND MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION. DISTRIBUTION OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS ANY REPRESENTATION OR WARRANTY AT ALL, EITHER EXPRESS OR IMPLIED, BY THE DEBTOR OR ITS RESPECTIVE PROFESSIONAL CONSULTANTS THAT THE PLAN IS FREE FROM RISK, THAT THE ACCEPTANCE OF THE PLAN WILL RESULT IN A RISK-FREE RESTRUCTURING OF THE DEBTOR'S OBLIGATIONS OR THAT THE DEBTOR'S

**OBLIGATIONS AS RESTRUCTURED BY THE PLAN WILL BE FULLY PERFORMED IN THE FUTURE WITHOUT RISK OF FURTHER DEFAULT. THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.**

## III.    Answers to Commonly Asked Questions

As part of the Debtor's effort to inform Creditors regarding the Plan and the Plan confirmation process, the following summary provides answers to questions which parties who receive a disclosure statement often ask.

### Who is the Debtor?

35NB LLC is a registered Corporation organized in the State of Texas. The Debtor is the owner of one piece of real property commonly described as:

> 3221 Commercial Circle New Braunfels, Texas 78132
> Lot 1, Revised Final Plat of COMAL REALTY, UNIT 1,
> City of New Braunfels, Comal County, Texas

### What is a Chapter 11 bankruptcy?

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts. The commencement of a Chapter 11 case creates an estate containing all the legal and equitable interests of the Debtor in property as of the date the petition is filed. Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate the debtor's business as a debtor-in-possession. The Debtor remains in possession of its properties and assets. When a Chapter 11 bankruptcy case is filed, creditors are prohibited from attempting to collect debts or enforce liens against the Debtor or its assets without first obtaining approval from the Bankruptcy Court.

### If the Plan governs how my claim is treated, what is this Disclosure Statement?

The Bankruptcy Code requires that debtors solicit acceptances and rejections of a proposed plan from creditors and shareholders whose claims and interests are impaired before the plan can be confirmed by the bankruptcy court. Before debtors may solicit acceptances of a plan, however, the bankruptcy court must approve a disclosure statement and determine that the disclosure statement contains information adequate to allow creditors and shareholders to make an informed judgment about the plan.

### Do I have to attend the hearing on the Disclosure Statement and Plan?

If you do not believe that the disclosure statement contains adequate information or if you believe that there is a problem with the Debtor's plan and you want to either get additional information from the Debtor or object to the plan, you need to file a written objection stating your position and

come to a hearing. Debtor's counsel can discuss your concerns from the Debtor's perspective but cannot give you legal advice and you may wish to consult your own counsel.

### How do I determine how my Claim or Interest is classified?

To determine the classification of your Claim you must determine the nature of your claim or interest. Under the Plan, claims and interests are classified into a series of Classes. The pertinent sections of the Disclosure Statement and Plan disclose, among other things, the treatment that each class of Claims or Interests will receive if the Plan is confirmed.

### Why is confirmation of the Plan important?

The Bankruptcy Court's confirmation of the Plan is a condition to the Debtor's right to carry out the treatment of creditors and shareholders under the Plan. Unless the Plan is confirmed, and any other conditions to confirmation or to the effectiveness of the Plan are satisfied, the Debtor is legally prohibited from satisfying Claims or Equity Interests as provided in the Plan.

### What is necessary to confirm the Plan?

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires, among other things that at least one class of impaired Claims or Interests vote to accept the Plan. Acceptance by a class of claims means that at least two-thirds in the total dollar amount and more than one-half in number of the allowed claims actually voting in the class vote in favor of the Plan. Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims. Besides acceptance of the plan by each class of impaired creditors or interests, a bankruptcy court also must find that a plan meets a number of statutory tests before it may confirm the plan. These requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept a plan but who will nonetheless be bound by the plan's provisions if a bankruptcy court confirms a plan. If one or more classes vote to reject a plan, a debtor may still request that the bankruptcy court confirm a plan under section1129(b). To confirm a plan not accepted by all classes, a debtor must demonstrate that the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and that has not accepted, the plan. This method of confirming a plan is commonly called a "cramdown". In addition to the statutory requirements imposed by the Bankruptcy Code, the plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.

### Is there a Creditors' Committee?

In this case no Creditors' Committee was formed.

### When is the deadline for returning my ballot?

The Bankruptcy Court has directed that, to be counted for voting purposes, your ballot must be received by the Debtor's counsel, Nelson M. Jones III, 440 Louisiana, Suite 1575, Houston, Texas 77002 or fax 713-236-8990, by 5:00 p.m., Houston time, on the date set forth in the Order Conditionally Approving Disclosure Statement and Setting Dates.

**IT IS IMPORTANT THAT ALL IMPAIRED CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND RECOMMENDS THAT ALL IMPAIRED CREDITORS VOTE TO ACCEPT THE PLAN.**

## IV.    BACKGROUND/OVERVIEW OF THE DEBTOR'S BUSINESS

### A.    Description and History of the Debtor's Business

**35NB LLC** filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 2, 2020. The filing of the petition constituted an order for bankruptcy relief under §301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to §362(a) of the Bankruptcy Code. The automatic stay prohibits most collection activities against 35NB LLC and its property. There are certain exceptions set forth in §362(b) of the Bankruptcy Code.

Debtor's Chapter 11 meeting of creditors under §341(a) of the Bankruptcy Code was held on May 19, 2020.

When 35NB LLC filed its bankruptcy case, all of its property became property of its bankruptcy estate.

35NB LLC has filed an Emergency Motion for Joint Administration of its case with the Chapter 11 case filed by Debtor, New Braunfels ER LLC (case no. 20-32553). Debtor's motion is still pending before the Court.

There are no other associated bankruptcy cases.

### B.    Management and Insiders of the Debtor

The Managing Members of the Debtor are Thomas Vo, MD, Shiraz W. Pirali, MD and Donna Campbell, MD.

The Manager of the Debtor during the Debtor's chapter 11 case has been Thomas Vo, MD.

After the effective date of the order confirming the Plan, the directors, officers, and voting members of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be the same as the managers during the pendency of the chapter 11 case. The responsibilities and compensation of these Post Confirmation Managers are described in this Disclosure Statement.

### C.    Events Leading to Bankruptcy

35NB LLC filed bankruptcy after the following events led it to determine that bankruptcy was the best course of action for itself and is in the best interest of its creditors.

35NB LLC is the owner of one piece of real property located at

  3221 Commercial Circle New Braunfels, Texas 78132
  Lot 1, Revised Final Plat of COMAL REALTY, UNIT 1,
  City of New Braunfels, Comal County, Texas

Debtor entered into a lease agreement with New Braunfels ER LLC, November 21, 2017. The lease agreement is a 120-month agreement with an occupancy start date of January 1, 2018. The monthly lease payment obligation is $16,000.00 per month. New Braunfels ER LLC is delinquent with payments of its monthly lease obligation.

35NB LLC is a guarantor for loan agreements between New Braunfels ER LLC and Regions Bank. Regions Bank sought to accelerate the loans made by New Braunfels ER LLC. As a result of said acceleration, Regions Bank executed a foreclosure sale notice dated March 3, 2020 on Debtor's Real Property. As a result, Debtor filed its Chapter 11 case on March 2, 2020.

## D.   Debtor's Financial Information

### 1. Accounting Method

The Debtor primarily uses the cash method of accounting. The Debtor has filed operating reports in this case that reflect its current financial condition.

### 2. Debtor's Assets

**35NB LLC** filed schedules of all of its assets and liabilities on March 16, 2020 and filed Amendments to its schedules May 19, 2020. Complete copies of the schedules are available from the Clerk of the Court. The primary assets of the bankruptcy estate, estimated values and associated liens are:

| Description of Asset | Estimated Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| **Real Property 3221 Commercial Drive, New Braunfels, Texas 78132** | $500,800.00 | $3,476,079.66 | $0.00 | $0.00 | Comal County Tax Estimate |

**The Debtor has the following pending litigation:**

There are no lawsuits to recover fraudulent transfers.
There are no lawsuits to recover any preferences.
There are no lawsuits arising under any provision of the Bankruptcy Code.

There are no lawsuits under non-bankruptcy law.

### 3. Sources of Income

In the last three years, 35NB LLC's income has been from the lease payments received from New Braunfels ER LLC:

| Year | Amount of Income |
|---|---|
| 2020 YTD | $0.00 |
| 2019 | $80,000.00 |
| 2018 | $80,000.00 |

## V. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, individual claim recovery will be limited to the amount provided by the Plan.

### B. Classes of Claims

## Classification and Treatment of Claim

### Class 1 Allowed Administrative Claims

Administrative claims are the claims allowed under §503(b) of the Bankruptcy Code for administration of this bankruptcy case. These claims will be paid in cash on the Effective Date of the plan, unless a written agreement to the contrary is made with the holder of any such allowed claim.

The Court must approve all professional fees listed in this Class. Professionals must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this plan.

These claims shall be paid in cash and in full on the Effective Date, the date on which such claim becomes an Allowed Claim or on such later date as the Debtor and the Holder of any Administrative Claims shall agree.

The following are the estimated administrative claims:

A.  The U.S. Trustee fees will be paid as a Class 1 Administrative Claim if any are owed on the Effective Date. The Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation of the plan will be paid in full on the effective date of the plan. After confirmation, the Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court. The Debtor shall file with the Court and serve on the United States Trustee a quarterly report for each quarter that the case remains open.

B.  Additionally, the Debtor's attorney's fees will be paid after approval of the Court. It is estimated that the outstanding Debtor's attorney's fees due will be less than $20,000.00.

| Claimant | Nature of Claim | Amount Claimed by Claimant | Amount Forecast to be Paid by the Debtor-in-Possession After Court Approval | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 | Total payable in Months 61-end |
|---|---|---|---|---|---|---|---|---|---|
| U.S. Trustee | Quarterly Fees | $5,000.00 (estimate) | $5,000.00 (estimate) | $5,000.00 | | | | | |
| Nelson M. Jones III | Attorney's Fees | $20,000.00 | $20,000.00 | $20,000.00 | | | | | |
| **TOTAL** | | | | **$25,000.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$0.00** |

### Class 2 Allowed Secured Claims of Regions Bank

The following is the classification and treatment of the Debtor's Class 2 claims under this plan. Class 2 consists of claims secured by the Debtor's property and are treated as indicated by the chart below:

| Class #2 | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any |
|---|---|---|---|---|---|
| | Regions Bank (Construction Loan) | **Impaired** | $2,728,598.35 | 3.933% | Guarantor for New Braunfels ER LLC Construction Loan |

| Class #2 | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any |
|---|---|---|---|---|---|
| | Regions Bank (Equipment Loan) | **Impaired** | $620,024.12 | 5.29% | Guarantor for New Braunfels ER LLC Equipment Loan |
| | **TOTALS** | | **$3,476,079.66** | | |

**Class 2 claims of Regions Bank (Construction Loan):** This Class 2 claims consists of the secured claims of Regions Bank, represented by a promissory note dated March 23, 2017 in the original principal amount of $3,587,000.00 (the "Note"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property commonly known as 3221 Commercial Circle New Braunfels, Texas 78132 (hereinafter the "Collateral")

**Post-Petition Payments.** Debtor shall continue making monthly payments to Regions Bank as required by the terms of the Note and Deed of Trust starting on the 1st day of July, 2020. The current monthly payment is $28,043.18 per month. Said payment is subject to future changes pursuant to the terms of the Deed of Trust and Note.

**Arrears:  Debtor does not owe Pre-Petition arrears.**

**Survival of Lien:**  Notwithstanding anything contained in this Plan to the contrary, the lien granted to Regions Bank on the collateral shall survive entry of the order of confirmation and any subsequent discharge entered by the court.

No further modification: Subject to the repayment terms set forth above, all other terms of the Note and Deed of Trust are not modified by this Plan and those terms shall survive confirmation of the Plan.

**Class 2 claim of Regions Bank (Equipment Loan):** Class 2 consists of the secured claim of Regions Bank, represented by a promissory note dated March 22, 2017 in the original principal amount of $900,000.00 (the "Note"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property commonly known as 3221 Commercial Circle New Braunfels, Texas 78132, Texas (hereinafter the "Collateral")

**Post-Petition Payments.** Debtor shall continue making monthly payments to Regions Bank as required by the terms of the Note and Deed of Trust starting on the 1st day of July, 2020. The current monthly payment is $17,103.94 per month. Said payment is subject to future changes pursuant to the terms of the Deed of Trust and Note.

**Arrears:  Debtor does not owe Pre-Petition arrears.**

**Survival of Lien:** Notwithstanding anything contained in this Plan to the contrary, the lien granted to Regions Bank on the collateral shall survive entry of the order of confirmation and the subsequent discharge entered by the court.

**No Further Modification:** Subject to the repayment terms set forth above, all other terms of the Note and Deed of Trust are not modified by this Plan and those terms shall survive confirmation of the Plan.

### Class 3 Allowed Secured Claim of County of Comal, Texas

Class 3 consists of the Secured Claim of County of Comal, Texas. The Holder of Class 3 Claims shall be paid 100% of its claim through income provided by Debtor's continued business income. Debtor shall make monthly payments to this class, which shall be distributed pro-rata to the claimants until the Debtor is discharged of its liability on debt.

The following claims are in this category:

| Class # 3 | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any |
|---|---|---|---|---|
| | County of Comal, Texas | Impaired | $58,098.60 | 12.00% |
| | **Total** | | **$58,098.60** | |

**Survival of Lien:** Notwithstanding anything contained in this Plan to the contrary, the lien granted to County of Comal, Texas on the collateral shall survive entry of the order of confirmation and any subsequent discharge entered by the court.

No further modification: Subject to the repayment terms set forth above, all other terms are not modified by this Plan and those terms shall survive confirmation of the Plan.

### Disputed Claims

**The Debtor-in-Possession will file, if not voluntarily withdrawn by the creditor, an objection to Claim 2 filed in Debtor's case by Four Wire Investments, LLC. This debt was not incurred by the Debtor.**

**The Debtor-in-Possession is not aware of any other present disputes over any other claims**.

## C.  Specific Rights of Claimant

In addition to any rights specifically provided to a Claimant treated pursuant to the Plan, a failure by the Reorganized Debtor to make a payment to a creditor pursuant to the terms of the Plan shall be an event of default to that creditor under the Plan. If the Reorganized Debtor fails to cure an event of default as to such payments within ten (10) days after delivery of a written notice of default from such creditor, then such creditor may exercise any and all rights and remedies under

non-bankruptcy law to collect such claim, including its rights as a judgment creditor if the Claimant is a judgment creditor of Debtor, or seek such relief as may be appropriate in the United States Bankruptcy Court. In the event of default as to a creditor, nothing in the Plan or order confirming Plan shall: (i) impact such creditor's lien rights that existed as the date of the filing of Debtor's petition for bankruptcy, and (ii) be construed to vest property in the Reorganized Debtor that was subject to a lien as of the date of the filing of Debtor's petition for bankruptcy.

## D.  Means of Implementing the Plan

### 1.  Description of Reorganization

35NB LLC intends to fund its plan of reorganization through the continued lease of its real property and by entering into a jointly administered plan agreement with its Co-Debtor (Regions Bank Loans), New Braunfels ER LLC, with Court approval. Debtor proposes the following:

(A) In joint agreement with New Braunfels ER LLC, with Court approval, the parties will continue to make on-going direct payments to Regions Bank. Additional, funds to support Debtor's plan reorganization will be contributed monthly by the member owners of 35NB. As part of the joint agreement, the parties will also work to bring the emergency room facility back to its previous operational and income producing status.

(B) The member owners of 35NB LLC, with Court approval, will pursue Debtor-in-Possession Financing sufficient enough to satisfy its loan obligations with Regions Bank and property tax payments due County of Comal, Texas,

(C) In joint agreement with New Braunfels ER LLC, with Court approval, the parties will market the land and emergency room structure for a possible third-party sale.

The Debtor believes that revenue from the above listed endeavors will ensure that Debtor is able to fund its Plan of Reorganization.

### Feasibility

Income from Debtor's business and jointly administered plan agreement with New Braunfels ER LLC will provide the primary means of funding the Plan. Debtor is certain that this income will enable it to extinguish the majority of its debt. Debtor believes the Plan to be feasible.

35NB LLC believes that its income in each of the next five years will be as follows:

| YEAR | LEASE PAYMENT INCOME | PROPOSED JOINTLY ADMINISTERED PLAN INCOME | TOTAL DEBTOR-IN-POSSESSION INCOME |
|---|---|---|---|
| 2020 | $96,000.00 | $215,000.00 | $311,000.00 |
| 2021 | $192,000.00 | $428,000.00 | $620,000.00 |

| 2022 | $192,000.00 | $428,000.00 | $620,000.00 |
| 2023 | $192,000.00 | $428,000.00 | $620,000.00 |
| 2024 | $192,000.00 | $428,000.00 | $620,000.00 |

### 2. Post-confirmation Management

The Post-Confirmation Managers of the Debtor, and their monthly compensation, shall be as follows:

| Name | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|
| Thomas Vo, MD. | Yes | Manager | $0.00 |
| Shiraz W. Pirali, MD | Yes | Manager | $0.00 |
| Donna Campbell, MD. | Yes | Manager | $0.00 |

## E. Risk Factors

Confirmation of the Plan and successful completion of the Plan depends on a number of factors. Set forth below are risks that are material to Debtor's business operations.

There are certain risks inherent in the reorganization process under the Bankruptcy Code. If certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Creditors accept the Plan. Although the Debtor believes that the Plan meets such standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion. If the Bankruptcy Court were to determine that such requirements were not met, it could require the Debtor to re-solicit acceptances, which could delay and/or jeopardize confirmation of the Plan. In this case, the same is true if the Bankruptcy Court determines that the contents of this Disclosure Statement are not sufficient or do not meet the standards of 11 U.S.C. § 1125.

As to the consummation of the Plan, if this Plan is confirmed then the Debtor believes it can perform as set forth in the proposed Plan.

## F. Executory Contracts and Unexpired Leases

The Debtor has one unexpired lease with New Braunfels ER LLC.

## G. Tax Consequences of Plan

### 1. Introduction

The following discussion summarizes certain of the important federal income tax consequences of the transactions described herein and in the Plan. This discussion is for informational purposes only and does not constitute tax advice. This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current

administrative rulings and practice. Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed. Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, life insurance companies and tax-exempt organizations. Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties. No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues. There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

**HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

### 2. Tax Consequences to the Debtor

Generally, under the terms of the Plan, Creditors' claims are to be discharged. Any income corresponding to the satisfaction of claims at a discount should not constitute taxable income to the Debtor since the debt forgiveness arises in connection with a case under Title 11 of the United States Code. The Debtor may be required to reduce certain tax attributes, such as net operating loss ("NOL") carryovers. Any NOLs remaining may be subject to utilization limitations imposed by Section 382 of the Internal Revenue Code of 1986, as amended.

### 3. Tax Consequences to Creditors

In General, the federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, (e) whether the Claimant reports income using the accrual or cash method of accounting, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim. Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of its Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid interest or accrued market discount, as described below) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange. Any loss recognized by a holder of an Allowed Claim will be a capital loss if the claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

### 4. Preservation of Net Operating Loss and Tax Attributes

Section 382 of the Internal Revenue Code could substantially limit, or deny in full, the availability of the Debtor's net operating loss and tax credit carry forwards as a result of the transactions contemplated under the Plan. Moreover, Section 108 of the Internal Revenue Code could result in the reduction of the loss and credit carry forwards based on the amount of debt discharged or converted to equity in the Reorganized Debtor as provided by the Plan.

### 5. Information Reporting and Backup Withholding

Under the backup withholding rules of the Internal Revenue Code, holders of Claims may be subject to backup withholding at the rate of 31 percent with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the holder's federal income tax liability. Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/or Advisors.***

## VI.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2 and 3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case is July 6, 2020 and September 2, 2020 for government entities.***

## 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

## 3. Who is not Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.      Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by A cram down on non-accepting classes, as discussed later in Section B.2.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.      Liquidation Analysis

At this date, the Debtor does not believe that the case should be converted to Chapter 7. If a conversion of the case were to occur, a trustee would be elected or appointed to liquidate the Debtor's assets. The proceeds of the liquidation would be distributed to the respective holders of Claims against and Equity Interests in the Debtor according to the priorities established by the Bankruptcy Code. Under Chapter 7, a secured creditor whose claim is fully secured would be entitled to full payment, including interest, from the proceeds of the sale of its collateral. Unless its claim is nonrecourse, a secured creditor whose collateral is insufficient to pay its claim in full would be entitled to assert an unsecured claim for its deficiency. Claims entitled to priority under the Bankruptcy Code would be paid in full before any distribution to general unsecured creditors. Funds, if any, remaining after payment of secured claims and priority claims would be distributed pro rata to general unsecured creditors. Debtor believes that liquidation under Chapter 7 will not result in funds available for payment to the Unsecured Creditors.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in Chapter 7 liquidation.

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest.   This treatment satisfies the liquidation test under §1129(a)(7)(A).

The Debtor does not have any general unsecured claims.  The Debtor has estimated that its assets, after payment of liens would not generate any amount for any unknown creditors:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claim as Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| Real Property | $500,800.00 | $3,476,079.66 | $0.00 | $0.00 | County Estimate |
| **Total** | **$500,800.00** | $3,476,079.66 | **$0.00** | **$0.00** | |

In a chapter 7 liquidation, the estimated liquidation value of $0.00 would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims.  This would produce the following:

| | |
|---|---|
| Liquidation Value | $0.00 |
| Estimated Trustee's Fees and expenses | $5,000.00 |
| Estimated other priority claims | $0.00 |
| Total available for holders of unsecured claims | $0.00 |
| Estimated general unsecured claims | $0.00 |
| Estimated recovery in liquidation | 0.00% |

Because of the above and that the plan forecasts no unsecured claims, this plan satisfies the liquidation test.

## D.     Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**Ability to Fund Plan**

35NB LLC intends to reorganize its finances through the continued lease of its real property and by entering into a jointly administered plan agreement allowing for member contributions with its Co-Debtor (Regions Bank Loans), New Braunfels ER LLC, with Court approval. Alternatively, with Court approval, Debtor will seek Debtor-in-Possession Financing sufficient enough to satisfy its loan obligations with Regions Bank and market the land and emergency room structure for a possible third-party sale. Debtor projects the following:

**Debtor's Five-Year Projection of Income and Expenses**

|  | Total Months 1-12 | Total Months 13-24 | Total Months 25-36 | Total Months 37-48 | Total Months 49-60 |
|---|---|---|---|---|---|
| **PROJECTED TOTAL INCOME** | $ 620,000.00 | $ 620,000.00 | $ 620,000.00 | $ 620,000.00 | $ 620,000.00 |
| **Regions Bank (Construction Loan monthly pmt: $28,043.18)** | $336,525.72 | $336,525.72 | $336,525.72 | $336,525.72 | $336,525.72 |
| **Regions Bank (Equipment Loan monthly pmt: $17,103.94)** | $205,247.28 | $205,247.28 | $205,247.28 | $205,247.28 | $205,247.28 |
| **Estimated Property Taxes** | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 |
| **Estimated Miscellaneous Expenses** | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| **TOTAL EXPENSES** | $613,773.00 | $613,773.00 | $613,773.00 | $613,773.00 | $613,773.00 |
| **PROJECTED UNALLOCATED EXCESS AMOUNT** | $ 6,227.00 | $ 6,227.00 | $ 6,227.00 | $ 6,227.00 | $ 6,227.00 |

The Debtor believes that revenue from the above listed endeavors will ensure that Debtor is able to fund its Plan of Reorganization.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Claims and Projections.**

## VII.   EFFECT OF CONFIRMATION OF PLAN

### A.   Discharge

On the Effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan to the extent permitted by the Bankruptcy Code and except as expressly provided in this Plan.

## B.      Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

## C.      Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**THE DEBTOR STRONGLY URGES ALL IMPAIRED CREDITORS TO VOTE TO ACCEPT THE PLAN.**

        **35NB LLC** has filed this Disclosure Statemen and Plan of Reorganization.  35NB LLC believes the information contained in this document to be true and correct in all respects.


        Dated: May 29, 2020


                                        Submitted through its counsel:



*/s/Thomas Vo, MD*                      */s/ Nelson M. Jones III*
**35NB LLC**                            **Nelson M. Jones III**
                                        TBN: 10973400
                                        440 Louisiana Street, Suite 1575
                                        Houston, Texas 77002
                                        Phone: 713-236-8736
                                        Fax: 713-236-8990
                                        njoneslawfirm@aol.com